Filed 1/9/14  In re Rafael S. CA5

<u>NOT TO BE PUBLISHED IN OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re RAFAEL S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. RAFAEL S., Defendant and Appellant. | F067280 (Super. Ct. No. JJD065389) **OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Poochigian, J., and Franson, J.

At a contested jurisdiction hearing, the juvenile court found true allegations that appellant, Rafael S., a minor, committed second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)), and that in doing so he personally used a deadly and dangerous weapon, viz., a knife (Pen. Code, § 12022, subd. (b)(1)). At the subsequent disposition hearing, the juvenile court continued appellant as a ward of the court and ordered him committed to the Tulare County Correctional Center Unit for a period of 240 to 365 days.

On appeal, appellant's sole contention is that the evidence was insufficient to support the instant adjudication. We affirm.

**FACTS**

*Jurisdiction Hearing Testimony*

Richard Z. (Richard), age 15, testified that on January 18, 2013, he was walking home from school when two males approached him.[1] One of them, who Richard identified at the jurisdiction hearing as appellant, pressed a pocket knife against Richard's stomach and demanded that Richard give him "everything [he] had." Richard "g[a]ve him [his] property."

Richard did not know appellant and the other person, but he had seen them before. "[T]hey were bugging [Richard] for the last two months, asking [him] if [he] banged a certain color."

On January 22, 2013, Richard was called to the principal's office at his school "to look at pictures and give a statement about what happened." He was shown photographs, but he determined the person who robbed him was not among those whose photographs he was shown. "A couple of hours later," Richard went back to the principal's office, looked at more photographs, and saw a photograph of the person who robbed him. At

---

[1] Except as otherwise indicated, all information in this section is taken from Richard's testimony.

2

that point, Richard asked the police officer on campus, Officer Jones, if he (Richard) could "have some time" so he could "see that person one more time to be certain." Richard "wanted more time to see a face, to see his face in public and be sure of it." Richard was "able to do that," and he "told [the officer] it was him."

On cross-examination, Richard reiterated he was approached by two people but he admitted he "remember[ed] telling [someone] else that there may have been more people there[.]" Richard has "a disease" called "Bipolar" that "makes [him] hallucinate and hear things that other people cannot hear or see." He testified, "I think that was the cause" of his previously stating there were more than two people at the scene. On redirect examination, Richard was asked if his in-court identification of appellant as the person who robbed him was "real" or "something [his] mind made up," Richard answered, "No that was real."

Richard provided a description of the robber and the other person who approached him to an investigating police officer. The robber was "bald" and was wearing a white shirt, black shorts and black shoes. The robber's companion "was also wearing black" and "his hair was almost a high-end, tight with a flat top."

Visalia Police Officer Matt Jones testified to the following: He was on duty on January 22, 2013, as a youth services officer at Golden West High School when a student advised him he had been robbed at knife-point. The student stated he had viewed some photographs but was unable to "recognize anyone." Later that day, the student told the officer he had previously seen the person who robbed him on campus, but he "wasn't totally sure" and "wanted to see them again." Officer Jones conducted a search of appellant's house, but did not find any of the property taken from Richard.

Frank D. (Frank) testified to the following: He attends Charter Alternative Academy. On January 18, 2013, Frank had a knife with him "at school," appellant was also "at school," and Frank gave the knife to appellant. When asked how he gave the

3

knife to appellant, Frank replied that "at lunch," while there were "a lot of other people there," he "put the knife on the lunch table." He did not see "what happened to the knife" after he put it on the table. At his school, Frank is required to stay on campus "during lunch."

*Additional Background*

At a hearing prior to the jurisdiction hearing, appellant's counsel told the court the following: According to the police report, the two persons who accosted Richard ran off, but appellant "has a breathing problem," as a result of which "[h]e can't run." In addition, at the time of the instant offense, appellant was on the electronic monitoring program and although the monitor was not working, appellant was not aware of that.

## DISCUSSION

There is no dispute the evidence was sufficient to establish someone robbed Richard. Appellant's claim on appeal is that the evidence was insufficient to establish *he* was the robber.

*Legal Background*

In determining whether the evidence is sufficient to support a finding in a juvenile court proceeding, the reviewing court is bound by the same principles as to the sufficiency and substantiality of the evidence which govern the review of criminal convictions generally. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) Those principles include the following: "[I]n reviewing the sufficiency of the evidence to support a conviction," we determine "'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) Substantial evidence is that evidence which is "reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "'[W]hile substantial evidence may consist of inferences, such inferences must be "a product of

4

logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].'" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.)  "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

An appellate court must "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  "[A] reviewing court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  These principles are applicable regardless of whether the prosecution relies primarily on direct or on circumstantial evidence. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1125.)

*Analysis*

Appellant bases his challenge to the sufficiency of the evidence supporting his adjudication chiefly on *People v. Carvalho* (1952) 112 Cal.App.2d 482 (*Carvalho*).  In that case, the appellate court reversed the defendant's conviction of kidnapping his estranged wife while armed. (*Id*. at p. 493.)  Although the alleged victim testified she was in fear of the defendant, the court noted that "[n]either during the time the complainant was with appellant nor in the month thereafter did her actions and conduct reflect any fear of him." (*Id.* at p. 490.)  The complainant had numerous opportunities to leave, but chose not to.  And she testified that while she was with the defendant at his rooming house, purportedly against her will, they "commenced 'making love,' which was consummated by an act of sexual intercourse between them.  [Then,] he went down the

5

hall to the bathroom while the prosecutrix remained in the bedroom where the weapon was allegedly reposing on the dresser or in a drawer, and she waited for him to return. Appellant then shaved, removed his clothing and proceeded to take a bath. With all this opportunity to leave she proceeded into the bathroom and washed his back, neck and arms for him." (*Ibid.*) Later, the couple went to a café, and "[w]hile enroute to dinner she stopped her automobile, alighted therefrom, went into a public telephone booth and called her son. She did not advise her son of her claimed predicament, nor did she telephone the police. [¶] When appellant finally left her, saying he would take a streetcar to his home, she made no complaint to the police." (*Ibid*.) The *Carvalho* court held that "the verdict rendered" was not "'reasonably' justified by the facts and circumstances disclosed by the evidence" because the complainant's testimony was "putting it mildly," "fantastic." (*Id*. at p. 489.) "[T]he circumstances testified to by the complainant are more than unusual. They do violence to reason, challenge credulity, and in the light of human experience, emasculate every known propensity and passion of people under the conditions testified to by the prosecutrix." (*Ibid*.)

It appears that appellant likens the instant case to *Carvalho* in four respects. First, he asserts that Frank could not have even been at Golden West High School at lunch on the day of the robbery because he was not allowed to leave his own school at lunch time, and therefore Frank's testimony that he made a knife available to appellant provides no support for the prosecution case. We disagree. The proposition that a high school student could and would sneak off campus hardly presents a "challenge to credulity" (*Carvalho*, *supra*, 112 Cal.App.2d at p. 489) on the order of that presented by the testimony of the complainant in *Carvalho*.

Second, appellant argues it is similarly "unbelievable" that he, believing his movements were being electronically monitored, would have committed a crime. There was however, no evidence adduced at the hearing regarding appellant's participation in,

6

or beliefs about, the electronic monitoring program, and our review of the instant adjudication is limited to evidence before the court at the jurisdiction hearing. Therefore this point cannot be considered on appeal. (Cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 [in juvenile dependency proceedings "'Proof … must be adduced to support a finding that the minor is a person described by Section 300' *at the jurisdiction hearing*" (italics added)]; *People v. Fiscalini* (1991) 228 Cal.App.3d 1639, 1644, fn. 5 [review of denial of Penal Code section 1538.5 suppression motion is limited to evidence before the court at the suppression motion hearing].) But even assuming for the sake of argument that we may view the record as containing evidence that appellant thought he was being electronically monitored, *Carvalho* is nonetheless distinguishable. Unfortunately, spectacularly bad judgment does not run counter to human nature, as did the claimed conduct of the complaining witness in *Carvalho*.

Third, appellant suggests it is impossible that he committed the instant offense because it is undisputed the robber "took off" after the robbery, and appellant suffers from breathing problems that render him unable to run and therefore, Richard's testimony, like the testimony of the complaining witness in *Carvalho*, cannot constitute substantial evidence. However, there was no evidence adduced at the hearing regarding appellant's physical limitations and/or his ability to run and therefore, as with the contention discussed above, this point also may not be considered on appeal. And in any event, assuming for the sake of argument that appellant did present evidence on this point, appellant's argument is based on a false premise, viz., that the person who robbed him *ran* away. As indicated above, Richard did not testify that appellant ran away, only that he "took off," i.e., left the scene.

Fourth, appellant argues the instant case "bears [a] resemblance[]" to *Carvalho* because, he asserts, the following factors render Richard's identification of appellant as the robber "weak and unreliable": (1) Richard suffers from a mental disorder that causes

7

him to hallucinate, and (2) even after seeing a photograph of appellant in the principal's office a few days after the robbery, he "was a little unsure of his assailant's identity and wanted to see appellant in person before making the identification."

These factors, however, do no more than militate in favor of a conclusion contrary to that reached by the juvenile court. They do not compel a contrary finding. Notwithstanding that Richard had, on occasions, experienced hallucinations and that he needed additional time to be sure of his identification of appellant from a photograph, it cannot be said that it was physically impossible or inherently improbable that, as Richard testified, appellant robbed him. Appellant's argument, in essence, asks us to reweigh the evidence, and this we cannot, and will not do. As indicated above, we resolve conflicts in the evidence, and the inferences drawn from the evidence, in favor of the judgment, and the testimony of a single witness is sufficient to establish guilt unless such testimony is physically impossible or inherently improbable. Richard's identification of appellant was neither.

Finally, appellant argues that the following factors support his position: (1) Although Richard provided a description of the robber and the robber's companion, the prosecution did not offer evidence of what appellant was wearing on the day of the robbery or the color of his hair, and (2) no knife was found in appellant's possession or in his residence. But these factors too, at most, support an inference contrary to the conclusion reached by the juvenile court and, under the principles of judicial review summarized above, we resolve such conflicts in favor of the judgment. On this record substantial evidence supports the instant adjudication. Therefore, appellant's challenge to the sufficiency of the evidence supporting that adjudication fails.

## DISPOSITION

The judgment is affirmed.

8